Daniel M. Hattis (SBN 232141)
Email: dan@hattislaw.com
HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650
Facsimile: (425) 412-7171

*Attorneys for Plaintiff*
*and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLY MOK,<br>for herself,<br>as a private attorney general,<br>and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>v.<br><br>COVERCRAFT INDUSTRIES, LLC,<br><br>                          Defendant. | Case No. 2:25-cv-6104<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br>**(1) VIOLATION OF CAL. CIVIL CODE § 1750 *et seq.*;**<br>**(2) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17500 *et seq.*;**<br>**(3) VIOLATION OF CAL. BUSINESS & PROFESSIONS CODE § 17200 *et seq.***<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Kelly Mok, individually, as a private attorney general, and on behalf of all others similarly situated, alleges as follows, on personal knowledge and the investigation of her counsel, against Defendant Covercraft Industries, LLC ("Covercraft" or "Defendant"):

# I.    **INTRODUCTION AND SUMMARY**

1.    Covercraft operates the Covercraft.com website where it advertises, markets, and sells car covers, seat covers, dashboard covers, floor mats, car sunshades, and other vehicle protection products directly to consumers throughout California and the United States. Nearly all of the products offered on Covercraft's website are manufactured by Covercraft.

2.    For years, Covercraft has engaged in a massive and consistent false discount advertising scheme on its website and in its marketing emails. Specifically, Covercraft advertises perpetual or near-perpetual discounts on virtually all of its products. These discounts are taken from Covercraft's advertised strikethrough reference prices for its products. Covercraft's discounts typically range from 20% to 40% off of Covercraft's advertised reference prices for the products. Covercraft represents these reference prices to be the regular and normal prices of the products, from which the advertised discounts are calculated.

3.    Covercraft prefaces the reference prices with the word "was" (e.g., "was $~~608.99~~") to further indicate that the higher reference price was Covercraft's previous and regular selling price for the product.

4.    Covercraft's advertised discounts and reference prices for its products are false because Covercraft advertises perpetual discounts on the products and never offers the products at their advertised reference price.

5.    Covercraft also advertises false limited-time discounts for its products to induce consumers to purchase the products immediately before they supposedly return to the (fictitious) reference price. For example, Covercraft uses

---

CLASS ACTION COMPLAINT

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

countdown clocks to represent that its sales are on the verge of ending. In reality, the discounts are never-ending and continue past the advertised sale end date.

6.      Covercraft's false discount advertising is so pervasive across all of its products and all of its advertising that it is apparent that the heart of Covercraft's marketing plan is to deceive the public.

7.      Covercraft's intent is to trick consumers into believing that its products are worth, and have a market value equal to, the inflated reference price, and that the lower advertised sale price represents a special bargain. Covercraft perpetrates this illegal scheme in order to induce consumers to purchase its products and to charge more for its products than it otherwise could have charged.

8.      Covercraft's false discount advertising harms consumers like Plaintiff by causing them to pay more than they otherwise would have paid and to buy products that they otherwise would not have bought. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.").

9.      Customers do not enjoy the actual discounts Covercraft promises them, and the products are not in fact worth the amount that Covercraft represents to them. Covercraft's deceptive pricing scheme also artificially increases the demand for its products and causes all customers, including Plaintiff and Class members, to pay price premiums to Covercraft.

10.     Covercraft's false discount advertising violates California's Consumers Legal Remedies Act (CLRA), California Civil Code § 1750 *et seq.*; False Advertising Law (FAL), California Business & Professions Code § 17500 *et seq.*; and Unfair Competition Law (UCL), California Business & Professions Code § 17200 *et seq.*, in numerous ways, as detailed below.

---

CLASS ACTION COMPLAINT

- 3 -

11. Plaintiff brings this lawsuit individually and on behalf of a nationwide class of consumers who purchased from the Covercraft website one or more products advertised with a discount. Plaintiff seeks restitution and/or disgorgement for herself and for each of the Class members. Additionally, Plaintiff, acting as a private attorney general, seeks public injunctive relief to protect the general public by enjoining Covercraft from engaging in the unlawful false advertising scheme alleged herein.

## II.   THE PARTIES

12. Plaintiff Kelly Mok is a citizen and resident of the city of Long Beach, in Los Angeles County, California, and is an unsophisticated consumer party.

13. Defendant Covercraft Industries, LLC is a limited liability company organized under California law with its principal place of business at 100 Enterprise Blvd, Pauls Valley, OK 73075. Covercraft Industries, LLC has manufacturing facilities in Los Angeles County, California. Covercraft Industries, LLC owns and operates the Covercraft website, Covercraft.com.

## III.   JURISDICTION AND VENUE

14. **Subject Matter Jurisdiction.** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from the Defendant.

15. **Personal Jurisdiction.** This Court has personal jurisdiction over Defendant because, without limitation: (1) Defendant is a limited liability company organized under California law; (2) Defendant is authorized to do business and regularly conducts business in California; (3) the claims alleged herein took place in California; and/or (4) Defendant has committed tortious acts within California (as alleged, without limitation, throughout this Complaint).

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1  Defendant has sufficient minimum contacts with California to render the exercise
2  of jurisdiction by this Court permissible.

3          16.    **Venue.** Venue is proper pursuant to 28 U.S.C. §1391 because
4  Plaintiff is a California citizen who resides in this District. Plaintiff also made her
5  purchase in this District.

6          17.    Venue is proper under Cal. Civil Code § 1780(d) because a
7  substantial portion of the transactions at issue occurred in Los Angeles County.
8  Plaintiff's declaration establishing that this Court is a proper venue for this action
9  is attached hereto as **Exhibit A.**

10 **IV.    COVERCRAFT'S FALSE DISCOUNT ADVERTISING SCHEME**

11         18.    Covercraft operates the Covercraft.com website where it advertises,
12 markets, and sells car covers, seat covers, dashboard covers, floor mats, car
13 sunshades, and other vehicle protection products directly to consumers
14 throughout California and the United States. Nearly all of the products offered on
15 Covercraft's website are manufactured by Covercraft.

16         19.    For years, Covercraft has engaged in a massive and consistent false
17 discount advertising scheme on its website. Specifically, Covercraft advertises
18 perpetual discounts on virtually all of its products. Covercraft's discounts
19 typically range from 20% to 40% off. These discounts are taken from
20 Covercraft's advertised strikethrough reference prices for its products. Covercraft
21 represents these reference prices to be the regular and normal prices of the
22 products. However, unbeknownst to its customers, Covercraft's discounts are
23 never-ending, and the products are never or almost never offered at the supposed
24 regular price. Covercraft perpetrates this illegal scheme in order to induce
25 consumers to purchase its products and to increase the amount it can charge for
26 its products.

27         20.    Covercraft aggressively advertises discounts throughout its website
28 and in its marketing emails. Covercraft typically advertises the discounts by

---

CLASS ACTION COMPLAINT

- 5 -

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

advertising a lower discounted price, next to a purported strikethrough regular price (the "reference price"). Covercraft prefaces the reference prices with the word "was" (e.g., "was $623.99") to further indicate that the reference price was Covercraft's previous and regular selling price for the product. Covercraft also advertises the actual selling price in bold red text with the term "Sale" (e.g., "**$467.99 Sale**"), and advertises in red text the amount the customer purportedly saves and a percentage-off discount (e.g., "save $156.00 (25% off)"). See the screenshots below.

**Product List Page Displaying Discounted Covercraft Car Covers 4/22/2025**



HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

**Product Page of Covercraft Custom WeatherShield HP Car Cover 4/22/2025**



21.     Covercraft makes the same pricing and discount representations in the online shopping cart, where it additionally displays the purported total savings (e.g., "Total Savings  -$187.20).

**Covercraft Online Shopping Cart – 4/22/2025**



**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

22.      Plaintiff's counsel's investigation has revealed that Covercraft advertises perpetual discounts on virtually all of its products. For example, below is a screenshot of a Covercraft 5-Layer Softback car cover for the Ford Mustang taken on March 5, 2025, with an advertised "was" strikethrough reference price of $433.99, on **Sale** for **$325.49**, such that a customer would "save $108.50 (25% off)" by purchasing it now.

### Covercraft Website – 3/5/2025



23.      However, these sale advertisements were false. Based on Plaintiff's counsel's investigation, the $433.99 advertised "was" reference price was not Covercraft's regular selling price for the car cover. In fact, Covercraft never previously sold the car cover at the advertised "was" reference price of $433.99 (and certainly not within the last 90 days). Covercraft always offered and sold the car cover at a much lower price, typically between $303.79 and $325.49.

---

CLASS ACTION COMPLAINT

- 8 -

24. Covercraft's false discount advertising of the car cover described above is typical and representative of the false discount advertising Covercraft perpetrates on its website for all of its "discounted" products.

25. Covercraft also advertises false limited-time discounts for its products to induce consumers to purchase the products immediately before they supposedly return to the (fictitious) reference price. Covercraft often uses countdown clocks to represent that its sales are on the verge of ending. For example, below is a screenshot of Covercraft's homepage taken on April 22, 2025, advertising a "Spring Black Friday Sale." At the top of the page, Covercraft states: "Hurry—Sale Ends Soon Up to 40% Off Site-Wide!" Below that, there is a countdown clock showing when the offer supposedly ends.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1

2

**Covercraft Homepage – 4/22/2025**

3



26.     Covercraft's statements that the discounts were time-limited were false. Immediately after this purportedly time-limited sales event ended, Covercraft continued advertising all or nearly all of its products at similar "discounted" prices.

27.     Covercraft makes similar misrepresentations in the marketing emails it sends to consumers. For example, below is a screenshot of a marketing email that Covercraft sent consumers on March 28, 2025, advertising a "Spring Sale."

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

At the top of the email, Covercraft states: "LAST CHANCE TO SAVE UP TO 40% OFF SITEWIDE". Below that, there is a countdown clock showing when the offer supposedly ends.

**Covercraft Marketing Email Sent On 3/28/2025**



28.     Covercraft's statements that the discounts were time-limited were false. Immediately after this purportedly time-limited sales event ended, Covercraft continued advertising all or nearly all of its products at similar "discounted" prices.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

V.    **PLAINTIFF'S ALLEGATIONS ARE BASED ON HER COUNSEL'S**
**COMPREHENSIVE INVESTIGATION INTO COVERCRAFT'S**
**PRACTICES**

29.    Plaintiff's allegations concerning Covercraft's false discount advertising are based in part on Plaintiff's counsel's investigation of the Covercraft website using the Internet Archive's Wayback Machine (available at www.archive.org).[1] Counsel's investigation also included examining the marketing emails that Covercraft has sent to consumers. Additionally, counsel has continuously monitored, and collected screenshots of, the Covercraft website on a near-daily basis since December 2024 through to the present.

30.    Counsel's investigation found that Covercraft has advertised perpetual discounts for the products on its website since at least 2023 (and likely earlier). From the first day Plaintiff's counsel began monitoring the Covercraft website on a near-daily basis in December 2024, through to the present, Covercraft has advertised virtually every product at a discount on every single day.

31.    Plaintiff's counsel also examined the marketing emails that Covercraft sends consumers, going back to 2023. The marketing emails continuously advertised major Covercraft.com sales events for all or nearly all of its products. These sales events were often back-to-back for months at a time. For example, Covercraft's marketing emails showed back-to-back sales events beginning on February 2, 2023, and continuing for four months straight leading up to Plaintiff's June 3, 2023 purchase of the UVS100 Custom Sunscreen. The emails also showed that the UVS100 Custom Sunscreen was included as part of every one of these back-to-back sales events.

---

[1]    The Internet Archive is an internet library that archives webpages. For more information, see https://archive.org/about/.

- 12 -    **HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

32.     Additionally, Plaintiff's counsel examined every available screenshot of the Covercraft website that they could find from the Internet Archive's Wayback Machine, going back to 2023. In every single screenshot that Plaintiff's counsel examined, every product shown was displayed with a discount.

33.     Based on information and belief, Covercraft has been engaging in false discount advertising since long before 2023. Plaintiff's counsel was unable to examine many Wayback Machine screenshots of the Covercraft website prior to 2023 because the Wayback Machine appeared to have problems capturing the Covercraft website during that time. However, the screenshots of the Covercraft website prior to 2023 that were available showed every product displayed with a discount. Additionally, pre-2023 marketing emails frequently advertised lengthy sales events which appeared to cover all or nearly all products on the website.

34.     Plaintiff's investigation into Covercraft's false discount advertising scheme is as thorough as possible under the circumstances. Thus, Plaintiff's allegations which are based on information and belief are permissible. "Without an opportunity to conduct any discovery, [Plaintiff] cannot reasonably be expected to have detailed personal knowledge of [Covercraft's] internal pricing policies or procedures." *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 568 (9th Cir. 2017). "Because [Plaintiff] need not specifically plead facts to which she cannot 'reasonably be expected to have access,' her allegations regarding the fictitious nature of the [reference] prices may properly be based on personal information and belief at [the pleading] stage of the litigation." *Id.* Here, Plaintiff's allegations are based not only on information and belief, but also on a comprehensive investigation of Covercraft's historical website advertising and marketing emails which was as thorough as possible under the circumstances.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

## VI.    COVERCRAFT'S FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES CALIFORNIA LAW

35.    Decades of academic research has established that the use of reference prices and discount advertising like that utilized by Covercraft materially impacts consumers' behavior. A reference price (e.g., the strikethrough "was" price advertised by Covercraft from which the advertised discounts and savings are calculated) affects a consumer's perception of the value of the transaction, the consumer's willingness to make the purchase, and the amount of money the consumer is willing to pay for the product.[2]

---

[2]    *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review,* 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

---

CLASS ACTION COMPLAINT

- 14 -

36.    When a reference price and corresponding discount is bona fide and truthful, it may help consumers in making informed purchasing decisions. In contrast, consumers are harmed when retailers, such as Covercraft, advertise their products with inflated false reference prices. The false reference prices deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

37.    As a direct and proximate result of Covercraft's false reference prices and false discounts, Plaintiff and Class members were harmed and lost money or property.

38.    First, Plaintiff and Class members were harmed because they would not have purchased the products at the prices they paid had they known that the discounts were fake and that the products had not in fact been regularly offered at the higher reference price. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013) ("[W]hen a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury.").

39.    Consumers who are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

40.    Additionally, Covercraft's advertised limited-time sales events created a false sense of urgency, which made consumers more likely to make a purchase.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

41.     Second, Plaintiff and Class members were harmed because they did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts Covercraft represented and promised to them. Plaintiff and Class members did not receive products that were worth the inflated amount that Covercraft represented to them; the products did not regularly sell for, and did not have a market value of, the fictitious reference price advertised by Covercraft.

42.     Third, Plaintiff and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from Covercraft's deceptive pricing scheme. Covercraft's false discount advertising scheme artificially increases consumer demand for Covercraft's products, which shifts the demand curve and allows Covercraft to charge more for its products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations.

43.     Covercraft's false advertising scheme enabled Covercraft to charge everyone more for all of its products by artificially stimulating demand based on false pretenses. *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial"). Without the misrepresentations, Covercraft would have had to charge less for its products in order to enjoy the same level of demand.

44.     In addition to harming consumers, the practice of employing false reference prices and false discounts also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar products, or otherwise compete in the same market, using valid and

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

accurate reference prices and true "sales." Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

45.    Federal and state courts have articulated the abuses that flow from false discount advertising practices. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

46.    The California Court of Appeal has likewise recognized the importance of California's false discount advertising statutes in protecting consumers: "Our Legislature has adopted multiple statutes that specifically prohibit the use of deceptive former price information and misleading statements regarding the amount of a price reduction. … These statutes make clear that … our Legislature has concluded 'reasonable people can and do attach importance to [a product's reference price] in their purchasing decisions.'" *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 730 (2018) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 333 (2011)).

47.    California law prohibits false reference pricing practices such as those perpetrated by Covercraft.

48.    California's Consumers Legal Remedies Act (CLRA) prohibits "advertising goods or services with the intent not to sell them as advertised," and specifically prohibits "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions." Cal. Civ. Code § 1770(a)(9), (13).

---

CLASS ACTION COMPLAINT

- 17 -

49.     California's False Advertising Law (FAL) prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely indicating that a product is on sale, when it actually is not. Moreover, the FAL specifically provides that "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding [the advertisement] or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement." Cal. Bus. & Prof. Code § 17501.

50.     Finally, California's Unfair Competition Law broadly bans all unlawful, unfair, and deceptive business practices. Cal. Bus. & Prof. Code § 17200.

51.     In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons." 16 C.F.R § 233.1. For example, an advertised former price is false when it is "an artificial, inflated price [that] was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one; the purchaser is not receiving the unusual value he expects." 16 C.F.R § 233.1(a).

52.     A UCL claim may be predicated on a violation of the Federal Trade Commission's regulations under the UCL's "unlawful" prong. *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017).

53.     As alleged in detail above, Covercraft's advertised reference prices and discounts violate California law because, based on the investigation of Plaintiff's counsel, Covercraft's advertised reference prices are inflated and fictitious, and Covercraft's advertised percentage-off and dollars-off discounts are false. Covercraft's reference prices and discounts are false because Covercraft advertises perpetual discounts on its products, and thus rarely, if ever, offers its products at their advertised reference price.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

54.    Additionally, because Covercraft advertises perpetual discounts of between 20% to 40% off, its advertised former prices were not the prevailing market price in the three months immediately preceding the advertisement. This is true for the products sold exclusively on the Covercraft website because Covercraft's own actual selling prices determine the prevailing market price. *People v. Superior Ct. (J.C. Penney Corp.)*, 34 Cal. App. 5th 376, 409 (2019). This is also true for the products also sold elsewhere "because in competitive markets, the actual prices offered by vendors selling the same item tend to converge on the market price." *Id.* at 416–17.

55.    Because Covercraft's advertised former prices are consistently significantly higher than its actual former prices for the products, the only reasonable inference is that those advertised prices were not the prevailing market prices during the requisite three-month period. *See id.* at 417; *see also Phillips v. Brooklyn Bedding LLC*, 2024 WL 2830663, at *5 (N.D. Cal. Mar. 28, 2024) ("[Plaintiff] need not identify the prices charged by other retailers to plausibly allege that the strikethrough prices were not the prevailing market prices. Instead, the Court can reasonably infer on a motion to dismiss that [Defendant] 'would not continually sell products for prices' for 'less than the market rates at which those products are offered elsewhere.'"); *Vizcarra v. Michaels Stores, Inc.*, 2024 WL 64747, at *5 (N.D. Cal. Jan. 5, 2024); *Lawyer v. Homary International Limited*, 2025 WL 1571856, at *5 (N.D. Cal. June 2, 2025); *Knapp v. Art.com, Inc.*, 2016 WL 3268995, at *5 (N.D. Cal. June 15, 2016).

56.    The false reference price and false discount representations by Covercraft were material to the decisions of consumers to purchase each product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these products, and consumers purchased these products on the basis of these representations in order to enjoy the purported discounts.

**HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

57.    Covercraft's false discount advertising is so pervasive across all of its products and all of its advertising that it is apparent that the heart of Covercraft's marketing plan is to deceive the public.

58.    Covercraft's intent is to deceive consumers into believing that its products are worth, and have a market value equal to, the inflated reference price (the strikethrough "was" price), and that the lower advertised "sale" price represents a special bargain.

59.    The false or misleading nature of Covercraft's reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable care under all the circumstances would not have known or discovered their false or misleading nature.

60.    As a direct and proximate result of Covercraft's acts and omissions, all consumers who have purchased a product from Covercraft that was advertised with a reference price or purported discount have been harmed and have lost money or property.

61.    Covercraft continues to advertise false reference prices and false discounts to this day. There is no reason to believe that Covercraft will voluntarily and permanently cease its unlawful practices. Moreover, in the unlikely event that Covercraft were to cease its unlawful practices, Covercraft can and is likely to re-commence these unlawful practices.

62.    In acting toward consumers and the general public in the manner alleged herein, Covercraft acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiff, the Class, and the public.

## VII.    PLAINTIFF'S FACTUAL ALLEGATIONS

63.    Plaintiff Kelly Mok is, and at all relevant times has been, a citizen and resident of the city of Long Beach, in Los Angeles County, California.

---

CLASS ACTION COMPLAINT

- 20 -

64.     Ms. Mok is a victim of Covercraft's false discount advertising scheme.

65.     As detailed above, Covercraft's false discounting practices have been ongoing since at least 2023. During this time, Ms. Mok purchased at least one product from Covercraft's website which was advertised with a false reference price and a false discount.

66.     On June 3, 2023, Ms. Mok visited the Covercraft website to shop for a car sunshade. While browsing the Covercraft website, Ms. Mok viewed pricing and discount representations similar to those described and presented in detail above. All of the products that she viewed were advertised as being discounted from a reference price. Every item that Ms. Mok viewed had a strikethrough "was" reference price for the item, alongside a lower "sale" price. Covercraft also advertised on the webpages that every item was at a specified dollar amount and and percentage-off savings.

67.     The products Ms. Mok viewed on the Covercraft website included a UVS100 Custom Sunscreen, Part # UV11836SV (the "Suncreen"). Ms. Mok viewed webpages advertising that the Suncreen was on "Sale" for $106.66 from a much higher regular price, which was represented as a strikethrough "was" price. Covercraft also advertised that the Sunscreen was at a specified percentage-off savings, and that she would "save" a specified dollar amount by purchasing the Sunscreen that day.

68.     Based on Covercraft's representations, Ms. Mok believed she needed to act fast and purchase the Sunscreen now to take advantage of the special sale before the Sunscreen returned to its normal full price.

69.     Ms. Mok then proceeded through the online checkout process. In the online shopping cart and during the checkout process, Covercraft continued to represent to Ms. Mok that the Sunscreen was on "sale" for $106.66 from a much higher strikethrough "was" reference price. Covercraft also advertised in the

shopping cart that Ms. Mok would enjoy "savings" of a specified dollar amount by purchasing the Sunscreen that day.

70.     Relying on these representations of receiving a special and significant discount for the Sunscreen, Ms. Mok completed the checkout process and purchased the Sunscreen.

71.     Relying on Covercraft's representations, Ms. Mok reasonably believed that the Sunscreen was normally offered and sold by Covercraft on its website at the higher advertised "was" strikethrough reference price. Ms. Mok reasonably believed that the Sunscreen was worth, and had a value of, the higher stated reference price. Ms. Mok reasonably believed that the advertised "sale" price of $106.66 represented a special bargain, where Covercraft was temporarily offering the product at a significant discount from the regular and normal selling price for the Sunscreen.

72.     However, Covercraft's representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Mok, Covercraft had never offered the Sunscreen at the higher purported "was" price on its website. For example, Ms. Mok's counsel's investigation found that Covercraft had perpetually offered the Sunscreen on its website at a purported discount (typically 20% to 25% off) since at least February 2, 2023 through the date of her purchase on June 3, 2023.

73.     The advertised "was" reference price was not Covercraft's regular offering price for the Sunscreen and did not reflect the market value of the Sunscreen. Ms. Mok did not receive the advertised and promised savings from the Sunscreen's true regular price.

74.     Covercraft's advertised reference price and discount for the Sunscreen were material misrepresentations and inducements to Ms. Mok's purchase.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

75.    Ms. Mok reasonably relied on Covercraft's material misrepresentations regarding the advertised reference price and discount for the Sunscreen. If Ms. Mok had known the truth, she would not have purchased the Sunscreen at the price she paid.

76.    As a direct and proximate result of Covercraft's acts and omissions, Ms. Mok was harmed, suffered an injury-in-fact, and lost money or property.

77.    When Ms. Mok shopped at Covercraft.com, she had no suspicion that Covercraft's advertised reference prices and discounts were false. Covercraft gave Ms. Mok no reason to be suspicious. Ms. Mok first learned of Covercraft's false discount advertising scheme in April 2025 when her attorneys told her about Covercraft's unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Ms. Mok did not know or suspect that Covercraft was engaging in a false discount advertising scheme or that she had been a victim of the scheme.

78.    Ms. Mok has a legal right to rely now, and in the future, on the truthfulness and accuracy of Covercraft's representations regarding the advertised reference prices and discounts for its products.

79.    Ms. Mok faces an imminent threat of future harm. Ms. Mok would purchase from Covercraft's website again in the future if she could have confidence regarding the truth of Covercraft's price and discount representations. But without an injunction, Ms. Mok has no realistic way of knowing which, if any, of Covercraft's reference prices, discounts, and sales are true.

80.    Ms. Mok will be harmed if, in the future, she is left to guess as to whether Covercraft is providing a legitimate sale or not, and whether its products are actually worth the amount that Covercraft is representing.

81.    If Ms. Mok were to purchase again from Covercraft without Covercraft having changed its unlawful and deceptive conduct alleged herein,

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1    Ms. Mok would be harmed on an ongoing basis and/or would be harmed once or
2    more in the future.

3         82.    The deceptive practices and policies alleged herein, and experienced
4    directly by Ms. Mok, are not limited to any single product or group of products.
5    Rather, Covercraft's deceptive advertising and sales practices, which advertise
6    and state false reference prices and false percentage-off and dollar-off discounts,
7    were, and continue to be, systematic and pervasive across all of Covercraft's
8    products.

9                              **CLASS ALLEGATIONS**

10        83.    Plaintiff brings this lawsuit on behalf of herself and all others
11   similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and
12   (b)(3).

13        84.    **Nationwide Class:** Plaintiff seeks to represent the following
14   nationwide class:

15            **All persons in the United States who, within the applicable**
16            **limitations period, purchased from the Covercraft website,**
17            **Covercraft.com, one or more products advertised at a**
18            **discount.**

19        85.    **California Subclass:** Plaintiff seeks to represent the following
20   California subclass:

21            **All persons who, while in California, within the applicable**
22            **limitations period, purchased from the Covercraft website,**
23            **Covercraft.com, one or more products advertised at a**
24            **discount.**

25        86.    Specifically excluded from the Class are Covercraft and any entities
26   in which Covercraft has a controlling interest, Covercraft's agents and employees,
27   the bench officers to whom this civil action is assigned, and the members of each
28   bench officer's staff and immediate family.

---

CLASS ACTION COMPLAINT                - 24 -

87. **<u>Application of the Discovery Rule.</u>** This Court should apply the discovery rule to extend any applicable limitations period and corresponding class period to the date on which Covercraft first engaged in its unlawful false discounting practices. (Based on counsel's investigation, Covercraft's false discount advertising practices have been ongoing since at least 2023 and likely began much earlier. However, without discovery, Plaintiff cannot determine the earliest date Covercraft first began advertising false discounts for its products.)

88. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *E-Fab, Inc. v. Accts., Inc. Servs.*, 153 Cal. App. 4th 1308, 1318 (2007). Plaintiff and the members of the Class did not know, and could not have reasonably known, about Covercraft's unlawful conduct.

89. When Plaintiff shopped at Covercraft.com, she had no suspicion that Covercraft's advertised reference prices and discounts were false. Covercraft gave Plaintiff no reason to be suspicious. Plaintiff first learned of Covercraft's false discount advertising scheme in April 2025 when her attorneys told her about Covercraft's unlawful conduct and informed her that she was a victim of the scheme. Prior to this, Plaintiff did not know or suspect—and had no reason to suspect—that Covercraft was engaging in a false discount advertising scheme or that she had been a victim of the scheme. *See Esgate v. Home Depot U.S.A., Inc.*, No. 6:24-CV-01806-MTK, 2025 WL 1207217, at *7–*8 (D. Or. Apr. 24, 2025) (holding that the plaintiff's claims did not begin to accrue under the discovery rule until the date his lawyers informed him that he was likely a victim of the defendant's false discount advertising scheme).

90. Likewise, Class members would not have known or suspected that Covercraft was engaging in this deceptive pricing scheme. Reasonable consumers presume that retailers are not engaging in unlawful conduct. Reasonable

---

CLASS ACTION COMPLAINT

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

consumers would have believed that Covercraft's pricing and discount representations were true.

91.     Reasonable consumers would have believed that Covercraft's "was" strikethrough reference prices: (1) represented Covercraft's regular and normal prices that consumers had to pay for the products; (2) represented Covercraft's recent former prices of the products (that is, the prices at which the products were regularly offered for sale before the purportedly limited-time offer went into effect); and (3) represented Covercraft's prices that consumers would have to pay for the products when the sale ended.

92.     Reasonable consumers would have believed that Covercraft's advertised discounts represented a reduction from the regular and recent former prices of the products in the amounts advertised.

93.     Moreover, Plaintiff and the Class could not have, with the exercise of reasonable diligence, discovered Covercraft's false advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover—especially regarding products that are purchased infrequently such as car covers, sun screens, and other vehicle protection products.

94.     "The only way for a person to know that [a retailer's] advertised discounts were false is for the person to know [the retailer's] true historical selling prices for the products he or she purchased." *Clark v. Eddie Bauer LLC*, No. 2:20-CV-01106-RAJ, 2025 WL 814924, at *3 (W.D. Wash. Mar. 12, 2025). Consumers who shopped at Covercraft.com would have had no way to know, with the exercise of reasonable diligence, the true daily price histories and past selling prices for the products they viewed and purchased. Consumers would have had no way to know, with the exercise of reasonable diligence, that Covercraft's regular prices (i.e., the advertised strikethrough "was" reference prices) were

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

fictitious and inflated and that the advertised percentage-off and dollars-off savings were false.

95.    Plaintiff's counsel only found evidence for Covercraft's deceptive pricing scheme by conducting an extensive investigation that no reasonable person would conduct.

96.    **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises thousands of individuals. The exact number and identities of Class members are contained in Covercraft's records and can be easily ascertained from those records.

97.    **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any. These common questions include, but are not limited to, the following:

a.    Whether the alleged conduct of Covercraft violates the California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*;

b.    Whether the alleged conduct of Covercraft violates the California False Advertising Law, California Business & Professions Code § 17500 *et seq.*;

c.    Whether the alleged conduct of Covercraft violates the California Unfair Competition Law, California Business & Professions Code § 17200 *et seq.*;

d.    Whether the alleged conduct of Covercraft violates 16 C.F.R § 233.1 *et seq.*;

e.    Whether Plaintiff and the Class have suffered injury and have lost money or property as a result of Covercraft's unlawful conduct; and

---

CLASS ACTION COMPLAINT

- 27 -

1     f.  Whether Covercraft should be enjoined from engaging in the

2 unlawful conduct alleged herein.

3    98. **Typicality.** Plaintiff's claims are typical of Class members' claims.

4 Plaintiff and Class members all sustained injury as a direct result of Covercraft's

5 standard practices and schemes, bring the same claims, and face the same

6 potential defenses.

7    99. **Adequacy.** Plaintiff and her counsel will fairly and adequately

8 protect Class members' interests. Plaintiff has no interests antagonistic to Class

9 members' interests and is committed to representing the best interests of the Class

10 members. Moreover, Plaintiff has retained counsel with considerable experience

11 and success in prosecuting complex class action and consumer protection cases.

12    100. **Superiority.** A class action is superior to all other available methods

13 for fairly and efficiently adjudicating this controversy. Each Class member's

14 interests are small compared to the burden and expense required to litigate each of

15 his or her claims individually, so it would be impractical and would not make

16 economic sense for Class members to seek individual redress for Covercraft's

17 conduct. Individual litigation would add administrative burden on the courts,

18 increasing the delay and expense to all parties and to the court system. Individual

19 litigation would also create the potential for inconsistent or contradictory

20 judgments regarding the same uniform conduct. A single adjudication would

21 create economies of scale and comprehensive supervision by a single judge.

22 Moreover, Plaintiff does not anticipate any difficulties in managing a class action

23 trial.

24    101. By its conduct and omissions alleged herein, Covercraft has acted

25 and refused to act on grounds that apply generally to the Class members, such that

26 declaratory relief is appropriate respecting the Class as a whole.

27    102. Covercraft is primarily engaged in the business of selling goods.

28 Each cause of action brought by Plaintiff against Covercraft in this Complaint

CLASS ACTION COMPLAINT    - 28 -    **HATTIS LUKACS & CORRINGTON**
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

arises from and is limited to statements or conduct by Covercraft that consist of representations of fact about Covercraft's business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, Covercraft's goods; or the statements are or were made in the course of delivering Covercraft's goods. Each cause of action brought by Plaintiff against Covercraft in this Complaint arises from and is limited to statements or conduct by Covercraft for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

## CAUSES OF ACTION

## COUNT I

### Violation of the Consumers Legal Remedies Act ("CLRA")

### California Civil Code § 1750 *et seq*.

103.   Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

104.   Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief to protect the general public, and as a representative of the Class.

105.   Covercraft's products are "goods" as defined by California Civil Code § 1761(a).

106.   Covercraft is a "person," as defined by Cal. Civ. Code § 1761(c).

107.   Plaintiff and Class members are each "consumers," as defined by Cal. Civ. Code §1761(d).

108.   Plaintiff and Class members purchased Covercraft's products for personal, family, and/or household purposes, as meant by Cal. Civ. Code § 1761(d).

109.   Plaintiff and Class members' purchases from Covercraft each constitutes a "transaction," as defined by Cal. Civ. Code § 1761(e).

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

110.   Venue is proper under Cal. Civil Code § 1780(d) because Los Angeles County, which is located in this District, is the county in which the transaction or any substantial portion thereof occurred, and it is a county in which Covercraft is doing business. Plaintiff's declaration establishing that this Court is a proper venue for this action is attached hereto as **Exhibit A.**

111.   The unlawful methods, acts or practices alleged herein to have been undertaken by Covercraft were all committed intentionally and knowingly. The unlawful methods, acts or practices alleged herein to have been undertaken by Covercraft did not result from a bona fide error notwithstanding the use of reasonable procedures adopted to avoid such error.

112.   Covercraft's conduct alleged herein has violated the CLRA in multiple respects, including, but not limited to, the following:

a.   Covercraft represented that its products had characteristics that they did not have. (Cal. Civ. Code § 1770(a)(5));

b.   Covercraft advertised its products with an intent not to sell them as advertised. (Cal. Civ. Code § 1770(a)(9));

c.   Covercraft made false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions (Cal. Civ. Code § 1770(a)(13)); and

d.   Covercraft misrepresented that its products were supplied in accordance with previous representations when they were not. (Cal. Civ. Code § 1770(a)(16)).

113.   With respect to any omissions, Covercraft at all relevant times had a duty to disclose the information in question because, inter alia: (a) Covercraft had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Covercraft concealed material information from Plaintiff and Class members; and (c) Covercraft made partial representations which were false and misleading absent the omitted information.

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

114.   Covercraft intentionally deceived Plaintiff and the Class, and continues to deceive the public, by advertising false discounts and false reference prices.

115.   Covercraft's misrepresentations deceive and have a tendency to deceive the reasonable consumer and the general public.

116.   Covercraft's misrepresentations are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

117.   As a direct, substantial, and/or proximate result of Covercraft's unlawful conduct, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

118.   Plaintiff and Class members reasonably relied on Covercraft's material misrepresentations, and would not have purchased Covercraft's products at the prices that they paid had they known the truth.

119.   Additionally, Covercraft's advertised limited-time discounts for its products were false and induced customers to purchase the products immediately before they supposedly returned to the (fictitious) reference price.

120.   Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts that Covercraft represented and promised to them. Plaintiff and Class members did not receive products that were worth the inflated amount that Covercraft represented to them; the products did not regularly sell for, and were not actually worth, the fictitious strikethrough reference price advertised by Covercraft.

121.   By its conduct and omissions alleged herein, Covercraft caused the demand for its products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Covercraft. Put differently, as a result of its misrepresentations, Covercraft has been able to charge a price premium for its products that it would not be able to charge absent

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

the misrepresentations. Without the misrepresentations, Covercraft would have had to charge less for its products in order to enjoy the same level of demand.

122.  **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the CLRA to protect the general public from Covercraft's false advertisements, misrepresentations, and omissions.

123.  Covercraft's misconduct, which affects and harms the general public, is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Covercraft absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Covercraft from committing the unlawful practices alleged herein.

124.  The balance of the equities favors the entry of permanent public injunctive relief against Covercraft. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Covercraft's ongoing false advertising absent the entry of permanent public injunctive relief against Covercraft.

125.  Plaintiff lacks an adequate remedy at law to prevent Covercraft from engaging in the unlawful practices alleged herein. Plaintiff would purchase products from Covercraft again if she could have confidence regarding the truth of Covercraft's prices and the value of its products. Plaintiff will be harmed if, in the future, she is left to guess as to whether Covercraft is providing a legitimate sale or not, and whether Covercraft's products are actually worth the amount that Covercraft is representing.

126.  Monetary damages are not an adequate remedy at law for <u>future</u> harm. *Clark v. Eddie Bauer LLC*, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages will not prevent Covercraft from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

certainty and thus cannot be awarded. For example, it is impossible to know what products Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts may be flooded with future lawsuits by Class members, Plaintiff, and the general public for future violations of the law by Covercraft.

127.   In accordance with California Civil Code § 1782(a), Plaintiff, through counsel, served Covercraft with notice of its CLRA violations by certified mail, return receipt requested, on July 5, 2025. If Covercraft fails to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiff's notice letter, Plaintiff will amend this complaint to seek compensatory and exemplary damages as permitted by Cal. Civ. Code §§ 1780 and 1782(b), along with attorneys' fees and costs.

## COUNT II

### Violation of California's False Advertising Law ("FAL")

### California Business & Professions Code § 17500 *et seq.*

128.   Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

129.   Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

130.   Covercraft has engaged in false or misleading advertising in violation of California Business & Professions Code § 17500, *et seq.*, also known as California's False Advertising Law ("FAL").

131.   Covercraft has advertised discounts and reference prices that are false, misleading, and have a capacity, likelihood or tendency to deceive reasonable consumers. *See*, *e.g.*, *Kasky*, 27 Cal.4th at 951 (UCL and FAL prohibit

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

"not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public" (citation omitted)); *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 722 (2018) (same); *Overstock.com, Inc.*, 2014 WL 657516, at *23 (Feb. 5, 2014, Cal. Sup. Ct.) (same).

132.    Additionally, Covercraft has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not true former prices and were not the prevailing market price in the three months immediately preceding the advertisement. Nor do Covercraft's former price advertisements state clearly, exactly, and conspicuously when, if ever, the former prices prevailed.

133.    With respect to omissions, Covercraft at all relevant times had a duty to disclose the information in question because, inter alia: (a) Covercraft had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Covercraft concealed material information from Plaintiff and Class members; and (c) Covercraft made partial representations which were false or misleading absent the omitted information.

134.    Covercraft committed such violations of the FAL with actual knowledge that its advertising was untrue or misleading, or Covercraft, in the exercise of reasonable care, should have known that its advertising was untrue or misleading.

135.    Covercraft's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

136.    Covercraft's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

---

CLASS ACTION COMPLAINT

- 34 -

137. As a direct and proximate result of Covercraft's violations of the FAL, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

138. Plaintiff and Class members reasonably relied on Covercraft's material misrepresentations, and would not have purchased Covercraft's products at the prices that they paid had they known the truth.

139. Additionally, Covercraft's advertised limited-time discounts for its products were false and induced customers to purchase the products immediately before they supposedly returned to the (fictitious) reference price.

140. Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts that Covercraft represented and promised to them. Plaintiff and Class members did not receive products that were worth the inflated amount that Covercraft represented to them; the products did not regularly sell for, and were not actually worth, the fictitious and invented reference price advertised by Covercraft.

141. By its conduct and omissions alleged herein, Covercraft caused the demand for its products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Covercraft. Put differently, as a result of its misrepresentations, Covercraft has been able to charge a price premium for its products that it would not be able to charge absent the misrepresentations. Without the misrepresentations, Covercraft would have had to charge less for its products in order to enjoy the same level of demand.

142. By its conduct and omissions alleged herein, Covercraft received more money from Plaintiff and Class members than it should have received. Covercraft should be ordered to disgorge or make restitution of all monies improperly accepted, received, or retained.

---

CLASS ACTION COMPLAINT

- 35 -

143.    Plaintiff seeks an order granting restitution to Plaintiff and Class members in an amount to be proven at trial. Plaintiff further seeks an award of attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

144.    **Permanent public injunctive relief.** Plaintiff, acting as a private attorney general, seeks public injunctive relief under the FAL to protect the general public from Covercraft's false advertisements, misrepresentations, and omissions.

145.    Covercraft's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by Covercraft absent a permanent public injunction. Accordingly, Plaintiff seeks an order enjoining Covercraft from committing the unlawful practices alleged herein.

146.    The balance of the equities favors the entry of permanent public injunctive relief against Covercraft. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from Covercraft's ongoing false advertising absent the entry of permanent public injunctive relief against Covercraft.

147.    Plaintiff lacks an adequate remedy at law to prevent Covercraft from engaging in the unlawful practices alleged herein, as stated in Count I above.

148.    Monetary damages are not an adequate remedy at law for future harm, as stated in Count I above.

## COUNT III

### Violation of California's Unfair Competition Law ("UCL")

### California Business & Professions Code § 17200 *et seq.*

149.    Plaintiff realleges and incorporates by reference all paragraphs previously alleged herein.

---

CLASS ACTION COMPLAINT

- 36 -

150.   Plaintiff brings this claim in her individual capacity, in her capacity as a private attorney general seeking the imposition of public injunctive relief, and as a representative of the Class.

151.   California Business & Professions Code § 17200, *et seq.*, also known as California's Unfair Competition Law ("UCL"), prohibits any unfair, unlawful, or fraudulent business practice.

152.   **"Unlawful" Prong.** Covercraft has violated the UCL by engaging in the following unlawful business acts and practices:

     a.   Making material misrepresentations in violation of Cal. Civ. Code §§ 1770(a)(5), (9), (13), and (16) (the CLRA);

     b.   Making material misrepresentations and omissions in violation of Cal. Bus. & Prof. Code § 17500 *et seq.* (the FAL);

     c.   Engaging in deceit in violation of Cal Civ. Code §§ 1709–1710; and

     d.   Employing deceptive discount price advertisements as identified by 16 C.F.R § 233.1 *et seq.*

153.   **"Unfair" and "Fraudulent" Prongs.** Covercraft has violated the UCL by engaging in the following unfair and/or fraudulent business acts and practices:

     a.   Advertising false reference prices;

     b.   Advertising false discounts, including percentage-off and dollar-off discounts; and

     c.   Advertising false "limited-time" sales and discounts.

154.   With respect to omissions, Covercraft at all relevant times had a duty to disclose the information in question because, inter alia: (a) Covercraft had exclusive knowledge of material information that was not known to Plaintiff and Class members; (b) Covercraft concealed material information from Plaintiff and

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

Class members; and (c) Covercraft made partial representations which were false and misleading absent the omitted information.

155.    Covercraft's misrepresentations and nondisclosures deceive and have a tendency to deceive the general public.

156.    Covercraft's misrepresentations and nondisclosures are material, in that a reasonable person would attach importance to the information and would be induced to act on the information in making purchase decisions.

157.    As a direct and proximate result of Covercraft's violations of the UCL, Plaintiff and Class members were harmed, suffered injury-in-fact, and lost money or property.

158.    Plaintiff and Class members reasonably relied on Covercraft's material misrepresentations, and would not have purchased Covercraft's products at the prices that they paid had they known the truth.

159.    Additionally, Covercraft's advertised limited-time discounts for its products were false and induced customers to purchase the products immediately before they supposedly returned to the (fictitious) reference price.

160.    Plaintiff and Class members did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts that Covercraft represented and promised to them. Plaintiff and Class members did not receive products that were worth the inflated amount that Covercraft represented to them; the products did not regularly sell for, and were not actually worth, the fictitious reference price advertised by Covercraft.

161.    By its conduct and omissions alleged herein, Covercraft caused the demand for its products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay price premiums to Covercraft. Put differently, as a result of its misrepresentations, Covercraft has been able to charge a price premium for its products that it would not be able to charge absent

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1  the misrepresentations. Without the misrepresentations, Covercraft would have
2  had to charge less for its products in order to enjoy the same level of demand.

3      162.   By its conduct and omissions alleged herein, Covercraft received
4  more money from Plaintiff and Class members than it should have received.
5  Covercraft should be ordered to disgorge or make restitution of all monies
6  improperly accepted, received, or retained.

7      163.   Covercraft's conduct and omissions alleged herein are immoral,
8  unethical, oppressive, unscrupulous, unconscionable, and/or substantially
9  injurious to Plaintiff and Class members. Perpetrating a years-long scheme of
10 misleading and overcharging customers is immoral, unethical, and unscrupulous.
11 Moreover, Covercraft's conduct is oppressive and substantially injurious to
12 consumers. There is no utility to Covercraft's conduct, and even if there were any
13 utility, it would be significantly outweighed by the gravity of the harm to
14 consumers caused by Covercraft's conduct alleged herein.

15     164.   Plaintiff seeks an order granting restitution to Plaintiff and Class
16 members in an amount to be proven at trial. Plaintiff further seeks an award of
17 attorneys' fees and costs under Cal. Code Civ. Proc. § 1021.5.

18     165.   **Permanent public injunctive relief.** Plaintiff, acting as a private
19 attorney general, seeks public injunctive relief under the UCL to protect the
20 general public from Covercraft's false advertisements, misrepresentations, and
21 omissions.

22     166.   Covercraft's misconduct which affects and harms the general public
23 is ongoing in part or in whole and even if such conduct were to cease, it is
24 behavior that is capable of repetition or re-occurrence by Covercraft absent a
25 permanent public injunction. Accordingly, Plaintiff seeks an order enjoining
26 Covercraft from committing the unlawful practices alleged herein.

27     167.   The balance of the equities favors the entry of permanent public
28 injunctive relief against Covercraft. Plaintiff, the members of the Class, honest

---

CLASS ACTION COMPLAINT

HATTIS LUKACS & CORRINGTON
11711 SE 8th St, Ste 120
Bellevue, WA 98005
Tel: 425.233.8650 | Fax: 425.412.7171
www.hattislaw.com

1  competing businesses, and the general public will be irreparably harmed from

2  Covercraft's ongoing false advertising absent the entry of permanent public

3  injunctive relief against Covercraft.

4      168.    Plaintiff lacks an adequate remedy at law to prevent Covercraft from

5  engaging in the unlawful practices alleged herein, as stated in Count I above.

6      169.    Monetary damages are not an adequate remedy at law for future

7  harm, as stated in Count I above.

8                      **PRAYER FOR RELIEF**

9          Plaintiff Kelly Mok, on behalf of herself and the proposed Class, requests

10  that the Court order relief and enter judgment against Covercraft as follows:

11      1.    Declare this action to be a proper class action, certify the proposed

12  Class, and appoint Plaintiff and her counsel to represent the Class;

13      2.    Order that the discovery rule applies to extend any applicable

14  limitations period and the corresponding class period back to the date Covercraft

15  first engaged in the unlawful conduct alleged herein;

16      3.    Declare that Covercraft's conduct alleged herein violates the CLRA,

17  FAL, and UCL;

18      4.    Order disgorgement and/or restitution, including, without limitation,

19  disgorgement of all revenues, profits and/or unjust enrichment that Covercraft

20  obtained, directly or indirectly, from Plaintiff and Class members as a result of

21  the unlawful conduct alleged herein;

22      5.    Permanently enjoin Covercraft from engaging in the unlawful

23  conduct alleged herein;

24      6.    Order that Covercraft maintain the following records for at least two

25  years for each daily product offering on its retail website from the date of each

26  advertisement and/or offer for sale of the product, for auditing purposes to ensure

27  compliance with the ordered public injunctive relief: (1) the advertised reference

28  price for each product; (2) the offer price and/or net selling price of each product;

---

CLASS ACTION COMPLAINT

- 40 -

and (3) any discount or free offer that was advertised and/or applicable to each product;

7.     Retain jurisdiction to monitor Covercraft's compliance with the permanent public injunctive relief requested hereinabove;

8.     Order Covercraft to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

9.     Grant such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Date: July 5, 2025.

Presented by:

HATTIS LUKACS & CORRINGTON

By:
Daniel M. Hattis (SBN 232141)
Email: dan@hattislaw.com
HATTIS LUKACS & CORRINGTON
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

*Attorneys for Plaintiff*
*and the Proposed Class*